Richard J. Reynolds (SBN 89911)
E-mail: rreynolds@bwslaw.com
Gail E. Kavanagh (SBN 154705)
E-mail: gkavanagh@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
1851 East First Street, Suite 1550
Santa Ana, CA 92705-4067
Tel: 949.863.3363    Fax: 949.863.3350

Attorneys for Defendant
MTC Financial Inc. dba Trustee Corps, Inc.
[erroneously sued as "MTC Financial d/b/a Trustee
Corp, Inc."]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID BUSHLOW,<br><br>Plaintiff,<br><br>v.<br><br>MTC FINANCIAL d/b/a TRUSTEE CORP, INC. ,<br><br>Defendant. | Case No. 5:17-cv-06771- HRL<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT MTC FINANCIAL, INC.'S MOTION TO DISMISS COMPLAINT**<br><br>**[Fed. R. Civ. P. Rule 12(b)(6)]**<br><br>Date:    April 10, 2018<br>Time:    10:00 a.m.<br>Place:   San Jose Courthouse<br>         Courtroom 2 – 5th Floor<br>         280 South 1st Street, San Jose, CA<br><br>Action Filed:  November 24, 2017 |

Defendant MTC FINANCIAL INC. dba TRUSTEE CORPS, INC. ("Trustee

Corps"), hereby requests, pursuant to Federal Rules of Evidence, Rule 201, that the Court

take judicial notice of the following records and documents.

     1.     The Deed of Trust (the "DOT") recorded as Document No. 2006003098 on April

21, 2006, identifying the Borrowers as Plaintiff, David Bushlow, and Catherine Hall; the Lender

as SCMA Mortgage Bankers, Inc.; the Trustee as Stewart Title Company of San Diego; and

Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the Lender.  The DOT

refers to a Promissory Note ("Note") in the amount of $222,000, secured by the property at 52

1   Sacramento Street, Bishop, California 93514 (the "Property").  A true and correct copy of the

2   DOT is attached hereto as **Exhibit A**.  The DOT is referenced and described throughout the

3   Complaint filed in this action.

4         2.   The Assignment of Deed of Trust recorded in Mono County as Document No.

5   2012002436 on May 7, 2012, by which MERS assigned the DOT to Bank of America NA.

6   Successor by Merger to BAC Home Loans Servicing LP, a true and correct copy of which is

7   attached hereto as **Exhibit B**.  This Assignment of Deed of Trust is referenced and described at

8   Paragraphs 90 *et seq.* of the Complaint filed in this action.

9         3.   The Notice of Default and Election to Sell Under Deed of Trust ("NOD") recorded

10   in Mono County as Document No. 12-4634 on September 5, 2012, a true and correct copy of

11   which is attached hereto as **Exhibit C**.  This NOD is referenced and described at Paragraphs 179

12   *et seq.* of the Complaint filed in this action.

13         4.   The Assignment of Deed of Trust recorded in Mono County as Document No.

14   2013004545 on August 16, 2013, assigning the Deed of Trust by Bank of America NA to Green

15   Tree Servicing LLC, a true and correct copy of which is attached hereto as **Exhibit D**.  This

16   Assignment of Deed of Trust is referenced and described at Paragraphs 212 *et seq.* of the

17   Complaint filed in this action.

18         5.   The letter from Trustee Corps to Plaintiff Bushlow dated July 14, 2016, a true and

19   correct copy of which is attached hereto as **Exhibit E**.   This Letter is described at discussed at

20   Paragraphs 232 *et seq.* of the Complaint filed in this action.

21         6.   The letter from Trustee Corps to Plaintiff Bushlow dated August 1, 2016, a true

22   and correct copy of which is attached hereto as **Exhibit F**.   This Letter is described at discussed

23   at Paragraphs 275 *et seq.* of the Complaint filed in this action.

24         7.   The Substitution of Trustee recorded in Mono County as Document NO.

25   2016003214 on August 29, 2016, whereby Green Tree Servicing, LLC substituted MTC Financial

26   Inc. dba Trustee Corps as Trustee under the DOT, a true and correct copy of which is attached

27   hereto as **Exhibit G**.  This Substitution of Trustee is referenced and described at Paragraphs 281

28   *et seq.* of the Complaint filed in this action.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

SF #4817-8913-0334 v1
06190-1557

- 2 -

REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO DISMISS

8.      The Notice of Trustee's Sale ("NOS") recorded in Mono County as Document No. 2016003975 on October 17, 2016, a true and correct copy of which is attached hereto as **Exhibit H.** This NOS is referenced and described at Paragraphs 311 *et seq.* of the Complaint filed in this action.

9.      The Assignment of Deed of Trust dated October 17, 2016 and recorded in Mono County as Document No. 2016004636 on November 21, 2016, by which Ditech Financial LLC fka Green Tree Servicing LLC assigned the DOT to Federal National Mortgage Association ("FNMA" or "FannieMae"), a true and correct copy of which is attached hereto as **Exhibit I.** This Assignment of Deed of Trust is referenced and described at Paragraphs 361 *et seq.* of the Complaint filed in this action.

10.     The Trustee's Deed Upon Sale ("TDUS") recorded in Mono County as Document No. 2016004637 on November 21, 2016, a true and correct copy of which is attached hereto as **Exhibit J.** This TDUS is referenced and described at Paragraphs 407 *et seq.* of the Complaint filed in this action.

The Court is authorized to take judicial notice of the above documents and the contents thereof because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  It is well-established that the Court can take judicial notice of officially recorded documents, such as deeds, trust deeds, CC&Rs, and the like. *See, e.g., Mulhall v. Wells Fargo Bank, N. A.*, 241 F.Supp.3d 1046, 1050 (N.D. Cal. 2017) ("Under [Rule] 201(b), publicly-recorded real estate instruments and notices are the proper subject of judicial notice, unless their authenticity is subject to reasonable dispute") *citing Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004); *Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Management Co.*, 393 F.Supp.2d 972, 977-978 (N.D. Cal. 2005) (judicial notice properly taken of deeds, recorded cancellation of lease, sales agreement, lease extension and settlement agreement , as all were recorded and "each falls into the category of documents capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Santa Ana

SF #4817-8913-0334 v1
06190-1557

- 3 -

REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO DISMISS

1    In addition, "[a] district court ruling on a motion to dismiss may consider documents

2    whose contents are alleged in a complaint and whose authenticity no party questions, but which

3    are not physically attached to the [plaintiff's] pleading." *Parrino v. FHP, Inc.,* 146 F.3d 699,

4    705 (9th Cir. 1998) (internal quotations and citations omitted) *superseded by statute on other*

5    *grounds as recognized in Abrego Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 681 (9th Cir.

6    2006). *See also Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir.2005) (the court on a motion to

7    dismiss may consider extrinsic documents when "the plaintiff's claim depends on the contents of

8    a document, the defendant attaches the document to its motion to dismiss, and the parties do not

9    dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

10   contents of that document in the complaint").

11        For all of these reasons, Trustee Corps respectfully requests that the Court to grant its

12   request and take judicial notice of Exhibits A through J hereto.

13   Dated: March 1, 2018                          BURKE, WILLIAMS & SORENSEN, LLP

14

15                                                 By: /s/ Gail E. Kavanagh

16                                                     Richard J. Reynolds
                                                       Gail E. Kavanagh
17                                                     Attorneys for Defendant
                                                       MTC Financial Inc. dba Trustee Corps, Inc.
18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Santa Ana

# Exhibit A

Doc # **2006003098**
Page 1 of 24
Date: **4/21/2006 11:55A**
Filed by: MOUNTAIN TITLE COMPANY
Filed & Recorded in Official Records
of MONO COUNTY
RENN NOLAN
CLERK-RECORDER
Fee: $76.00

# MOUNTAIN TITLE COMPANY

Recording Requested By:
SCME MORTGAGE BANKERS, INC.

Return To:
SCME MORTGAGE BANKERS, INC.

6265 GREENWICH DRIVE, #200
SAN DIEGO, CA 92122

Prepared By:

*13062M*

————————————————— [Space Above This Line For Recording Data] —————————————————

# DEED OF TRUST

LOAN NO.: 63014372
ESCROW NO.: 13062M

MIN 100031800630143729
MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          APRIL 14, 2006
together with all Riders to this document.
(B) "Borrower" is
DAVID BUSHLOW, A SINGLE MAN AND CATHERINE R. HALL, A SINGLE WOMAN, AS JOINT TENANTS

Borrower's address is 52 SACRAMENTO STREET, BISHOP, CA 93514
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
SCME MORTGAGE BANKERS, INC., A CALIFORNIA CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

Initials

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01
VMP-6A(CA) (0207)                    Page 1 of 15          LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/04)

**EXHIBIT A, PAGE 000001**

Lender's address is
6265 GREENWICH DRIVE, #200, SAN DIEGO, CA 92122

(D) "Trustee" is
STEWART TITLE COMPANY OF SAN DIEGO, A CALIFORNIA CORPORATION

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated      APRIL 14, 2006
The Note states that Borrower owes Lender
TWO HUNDRED TWENTY TWO THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X
                                                                                      Dollars
(U.S. $ 222,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     MAY 01, 2031

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify] MANUFACTURED HOME RIDER | | |

AFFIXATION AFFIDAVIT REGARDING MANUFACTURED UNIT
MANUFACTURED HOME LIMITED POWER OF ATTORNEY

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials

VMP-6A(CA) (0207)                    Page 2 of 15                    Form 3005  1/01

EXHIBIT A, PAGE 000002

DOC # 2006003098
Page 3 of 24

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of MONO :
[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 26-291-03     which currently has the address of
52 SACRAMENTO STREET     [Street]
BISHOP     [City] , California     93514     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials:

**EXHIBIT A, PAGE 000003**

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

**EXHIBIT A, PAGE 000004**

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials

EXHIBIT A, PAGE 000005

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials ____

**EXHIBIT A, PAGE 000007**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initial

EXHIBIT A, PAGE 000009

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

　　13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

　　Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

　　14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

　　If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

　　15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials

**EXHIBIT A, PAGE 000010**

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

**EXHIBIT A, PAGE 000011**

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

EXHIBIT A, PAGE 000012

DOC # 2006003098
Page 13 of 24

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials:

**EXHIBIT A, PAGE 000013**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                         -Witness

_____
                                         -Witness

_____(Seal)          _____(Seal)
DAVID BOSHLOW                   -Borrower       CATHERINE R. HALL               -Borrower

_____(Seal)          _____(Seal)
                                 -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                                 -Borrower                                       -Borrower

_____(Seal)          _____(Seal)
                                 -Borrower                                       -Borrower

VMP-6A(CA) (0207)                      Page 14 of 15                    Form 3005  1/01

**EXHIBIT A, PAGE 000014**

DOC # **2006003098**
Page 15 of 24

State of  CALIFORNIA
County of  INYO

On APRIL 18, 2006

before me, PENNY K. WEBB, NOTARY PUBLIC

} ss.

personally appeared

DAVID BUSHLOW, CATHERINE R. HALL

, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is/~~are subscribed to the within instrument and acknowledged to me that ~~he/she/~~they executed the same in ~~his/her/~~their authorized capacity(ies), and that by ~~his/her/~~their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

PENNY K. WEBB
COMM. # 1451360
NOTARY PUBLIC-CALIFORNIA
INYO COUNTY
COMM. EXP. NOV. 17, 2007

_Penny K. Webb_ (Seal)

VMP-6A(CA) (0207)

Page 15 of 15

Initials
Form 3005 1/01

**EXHIBIT A, PAGE 000015**

## MANUFACTURED HOME RIDER TO THE
## MORTGAGE/DEED OF TRUST/TRUST INDENTURE

LOAN NO.: 63014372                                    MIN: 100031800630143729
                                                      MERS Phone: 1-888-679-6377

This Rider is made          APRIL 14, 2006        and is incorporated into and shall be deemed to amend
and supplement the Mortgage/Deed of Trust/Trust Indenture (the "Security Instrument") of the same date
given by the undersigned (the "Borrower") to secure Borrower's Note to
SCME MORTGAGE BANKERS, INC., A CALIFORNIA CORPORATION
(the "Note Holder") of the same date (the "Note") and covering the property described in the Security
Instrument and located at

                    52 SACRAMENTO STREET, BISHOP, CA  93514
                              (Property Address)

LEGAL DESCRIPTION:
SEE DEED OF TRUST FOR COMPLETE LEGAL DESCRIPTION.

TOGETHER WITH:

| | |
|---|---|
| YEAR | 2002 |
| SIZE (Length and Width) | 196.30 x 115 |
| SERIAL # / VIN | GWCA 21 L29110AB 02P661F |
| MAKE | HBDS MFG LP |
| MODEL | OAK WOOD |

MODIFICATIONS: In addition to the covenants and agreements made in the Security Instrument,
Borrowers and Note Holder further covenant and agree as follows:

A.      PROPERTY.

        Property, as the term is defined herein, shall also encompass the Manufactured Home affixed to
        the real property legally described herein.

B.      ADDITIONAL COVENANTS OF BORROWER.

        (a)     Borrower(s) covenant and agree that they will comply with all state and local laws and
                regulations regarding the affixation of the Manufactured Home to the real property
                described herein including, but not limited to, surrendering the Certificate of Title (if
                required) and obtaining the requisite governmental approval and accompanying
                documentation necessary to classify the Manufactured Home as real property under state
                and local law.

                Page 1 of 2          LENDER SUPPORT SYSTEMS INC. GEN-340.GEN (07/05)

**EXHIBIT A, PAGE 000016**

(b)     That the Manufactured Home described above shall be, at all times, and for all purposes, permanently affixed to and part of the real property legally decribed herein.

(c)     Borrower(s) covenant that affixing the Manufactured Home to the real property legally described herein does not violate any zoning laws or other local requirements applicable to manufactured homes and further covenant that the Manufactured Home has been delivered and installed to their satisfaction and is free from all defects.

By signing this, Borrower(s) agree to all of the above.

_____(Seal)        _____(Seal)
DAVID BUSHLOW                    -Borrower     CATHERINE R. HALL              -Borrower

_____(Seal)        _____(Seal)
                                 -Borrower                                    -Borrower

_____(Seal)        _____(Seal)
                                 -Borrower                                    -Borrower

_____(Seal)        _____(Seal)
                                 -Borrower                                    -Borrower

Page 2 of 2

EXHIBIT A, PAGE 000017

DOC # 2006003098
Page 18 of 24

## AFFIXATION AFFIDAVIT REGARDING MANUFACTURED
## (AND FACTORY BUILT) HOUSING UNIT

LOAN NO.:   63014372

MIN: 100031800630143729
MERS Phone: 1-888-679-6377

This Affixation Affidavit Regarding Manufactured (and Factory Built) Housing Unit is incorporated into and shall be deemed to amend and supplement the Mortgage, Security Deed or Deed of Trust and any and all riders or amendments thereto (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's obligation under the Note, Disclosure and Security Agreement of the same date to Lender and secured by the property described in the Security Instrument (the "Property").

In addition to the covenants and agreements made in the Security Instrument, Borrower covenants and agrees as follows:

1.  The manufactured housing unit located or to be located at the Property is or will be permanently affixed to a foundation and will assume the characteristic of site-built housing.
2.  The wheels, axles, towbar, or hitch were or will be removed when said manufactured housing unit was or is placed on its permanent site.
3.  All foundations, both perimeter and piers for said manufactured housing unit have or will have footings that are located below the frost line or in compliance with local building codes or requirements.
4.  If piers are used for said manufactured housing unit, they will be placed where said housing unit manufacturer recommends.
5.  If state law so requires, anchors for said manufactured housing units will be provided.
6.  The manufactured housing unit is or will be permanently connected to a septic or sewage system and other utilities such as electricity, water and natural gas.
7.  No other lien or financing affects said manufactured housing unit, other than those disclosed in writing to Lender.
8.  Said manufactured housing unit has been built under the National Manufactured Housing Construction and Safety Standards Act.
9.  The foundation system of the manufactured housing unit has been or will be designed by an engineer, if required by state or local building codes, to meet the soil conditions of the site.
10. Borrower(s) acknowledges his or her intent that said manufactured housing until will be a fixture and part of the Property securing the Security Instrument.

Initials

Page 1 of 3          LENDER SUPPORT SYSTEMS INC. GEN-428L.GEN (07/05)

**EXHIBIT A, PAGE 000018**

11. The manufactured housing unit will be assessed and taxed as an improvement to the Property.  I/We understand that if Lender does not escrow for these taxes, that I/we will be responsible for payment of such taxes.

12. If the land is being purchased, such purchase and said manufactured housing unit represent a single real estate transaction under applicable state law.

13. For FHA loans only: The manufactured housing unit is being moved one time only and will be permanently affixed to the property.

| | |
|---|---|
| YEAR | 2002 |
| SIZE (Length and Width) | 196.30 x 115 |
| SERIAL # / VIN | GWCA 21 L29110AB 02P661F |
| MAKE | HBDS MFG LP |
| MODEL | OAK WOOD |

By signing this, Borrower(s) agree to all of the above.

_____ 4/8/6 _____ (Seal)
DAVID BUSHLOW                    -Borrower

_____ (Seal)
CATHERINE R. HALL               -Borrower

_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

Page 2 of 3

DOC # 2006003098
Page 28 of 24

By signing this, Lender's Agent affirms the Lender's intent that the Manufactured Home will be a permanent improvement to the land.

Lender:  SCME MORTGAGE BANKERS, INC.

Lender's Agent:  _Michelle Lilley-galvan_

Agent Signature:  _____

Page 3 of 3

**EXHIBIT A, PAGE 000020**

DOC # 2006003098
Page 21 of 24

# MANUFACTURED HOME
## LIMITED POWER OF ATTORNEY

LOAN NO.:   63014372

MIN: 100031800630143729
MERS Phone: 1-888-679-6377

THE UNDERSIGNED hereby appoints
SCME MORTGAGE CORPORATION
and its successor and/or assigns, as my/our true and lawful Attorney-in-Fact, with power of substitution and revocations, to apply for a certificate of title or duplicate certificate of title to or record a lien and register and/or to transfer or assign the title to any person the below ("Collateral"): along with the following actions as though executed by me/us.

(1)   To execute in my/our behalf as my/our Attorney-in-Fact whatever documents are necessary to effectuate the sale of the Collateral in the event of a default by me/us under my/our Manufactured Home Installment Note, Security Agreement and Disclosure Statement, as applicable (the "Contract") which results in a repossession and sale of the Collateral securing the Contract, subject to the terms of the Contract and applicable state law governing disposition of the Collateral; or

(2)   For said purpose(s) to sign my/our name(s) and to do all things necessary to appointment, and to transfer or assign title to any property taken in trade or consideration for the purchase of the below described Collateral.

(3)   Re-title the Collateral to correct any errors or to ensure the proper perfection security interest in the Collateral.

This limited power of Attorney ("POA") shall be durable and not be affected by subsequent disability or incapacity of the principal, or by the lapse of time.  This POA shall not be construed as a waiver of my/our rights under the Contract or applicable state law governing the Contract and the sale of Collateral.

| | |
|---|---|
| YEAR | 2002 |
| SIZE (Length and Width) | 196.30 x 115 |
| SERIAL # / VIN | GWCA 21 L29110AB 02P661F |
| MAKE | HBDS MFG LP |
| MODEL | OAK WOOD |

Initials

LIMITED POWER OF ATTORNEY
09/20/02

Page 1 of 3

LENDER SUPPORT SYSTEMS INC. GEN-429.GEN (07/05)

**EXHIBIT A, PAGE 000021**

By signing this, Borrower(s) agree to all of the above.

_____ (Seal)  _____ (Seal)
DAVID BUSHLOW      -Borrower  CATHERINE R. HALL    -Borrower

_____ (Seal)  _____ (Seal)
          -Borrower               -Borrower

_____ (Seal)  _____ (Seal)
          -Borrower               -Borrower

_____ (Seal)  _____ (Seal)
          -Borrower               -Borrower

EXHIBIT A, PAGE 000022

DOC # 2006003098
Page 23 of 24

State of   CALIFORNIA                           )
County of   ~~MONO~~ INYO                        )

    On  APRIL 18, 2006, before me, PENNY K. WEBB, NOTARY PUBLIC
a Notary Public in and for said County and State, personally appeared
DAVID BUSHLOW, CATHERINE R. HALL

~~personally known to me (or~~ proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the
same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the
person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

    Witness my hand and official seal.            Signature _Penny K. Webb_

                                            PENNY K. WEBB
                                            Notary Name

PENNY K. WEBB
COMM. # 1451360
NOTARY PUBLIC-CALIFORNIA
INYO COUNTY
COMM. EXP. NOV. 17, 2007

                                            NOV. 17, 2007
                                            Commission Expiration Date

Initial

Page 3 of 3

**EXHIBIT A, PAGE 000023**

DOC # 2006003098
Page 24 of 24

Loan Name: DAVID BUSHLOW

LOAN NO.:  63014372

Property Address: 52 SACRAMENTO STREET, BISHOP, CA  93514

## EXHIBIT "A"
### LEGAL DESCRIPTION OF PROPERTY

LOT 3, BLOCK 3, WOLBACH'S SUBDIVISION, IN THE COUNTY OF MONO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5, PAGES 41 AND 41A OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

LENDER SUPPORT SYSTEMS INC.  EX-A.FRM  (03/98)

**EXHIBIT A, PAGE 000024**

# Exhibit B

Recording Requested By:
**Bank of America**
Prepared By: **Bank of America**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID# **17011942823720669**

Property Address:
**52 Sacramento St**
**Bishop, CA 93514-9462**

CA0-ADT 18131282          4/21/2012

```
Doc # 2012002436
Page 1 of 2
Date: 5/7/2012 02:45P
Filed by: CORELOGIC INFORMATION SOLUTION
Filed & Recorded in Official Records
of MONO COUNTY
LYNDA ROBERTS
CLERK-RECORDER
Fee: $11.00
```

This space for Recorder's use

MIN #: 100031800630143729          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP** whose address is **13150 WORLD GATE DR, HERNDON, VA 20170** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **SCME MGRTGAGE BANKERS INC,** |
| Original Borrower(s): | **DAVID BUSHLOW, A SINGLEMAN AND CATHERINE HALL, A SINGLEWOMAN, AS JOINT TENANTS** |
| Original Trustee: | **STEWART TITLE COMPANY OF SAN DIEGO, A CALIFORNIA CORPORATION** |
| Date of Deed of Trust: | 4/14/2006 |
| Original Loan Amount: | **$222,000.00** |

Recorded in **Mono County, CA** on: **4/21/2006**, book **N/A**, page **N/A** and instrument number **2006003098**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

4-23-2012

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

Martha Munoz Vice President

**Exhibit B, Page 000001**

DOC # 2012002436
Page 2 of 2

State of California
County of Ventura

On ___APR 2 3 2012___ before me, ___VAZRIK SARAFIANS_____, Notary Public, personally appeared

___MARTHA MUNOZ_____, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

_Nazik Mou_

Notary Public      ___VAZRIK SARAFIANS_____      (Seal)
My Commission Expires:   ___NOV/06/2013___

VAZRIK SARAFIANS
Commission # 1867732
Notary Public - California
Los Angeles County
My Comm. Expires Nov 6, 2013

Exhibit C

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND
CORRECT COPY OF THE ORIGINAL RECORDED
IN THE OFFICE OF MONO COUNTY

| | |
|---|---|
| RECORDING FEE: | **$17.00** |
| RECORDED ON: | **September 5, 2012** |
| AS DOCUMENT NO: | **12-4634** |
| BY: | **s/ LUIS HENRIQUEZ** |

LSI TITLE COMPANY

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

RECONTRUST COMPANY

1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Fabian Elias
TS No. 12-0074210
Title Order No. 120300443

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is  $8,459.22, as of 08/30/2012 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

**Exhibit C, Page 000001**

TS No. 12-0074210

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

BANK OF AMERICA, N.A.
C/O Bank of America, N.A.
400 National Way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 04/14/2006, executed by DAVID BUSHLOW, A SINGLE MAN AND CATHERINE R HALL, A SINGLE WOMAN, AS JOINT TENANTS as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 04/21/2006, as Instrument No. 2006003098 (or Book , Page ) of Official Records in the Office of the County Recorder of Mono County, California.

Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 222,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON 06/01/2012 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES. IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON 05/01/2031 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

**Exhibit C, Page 000002**

TS No.  12-0074210

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured  thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable  and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: August 30, 2012

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

_____   AUG 3 0 2012

Wally Davidson, Asst Vice President

*Form nodorig__2011.12.1_12/2011*

**Exhibit C, Page 000003**

**Bank of America**
Home Loans

Notice Date:   August 27, 2012

| 12-0074210 |
|---|

David Bushlow & Catherine R Hall
52 Sacramento St
Bishop, CA 93514

Property Address:
52 Sacramento Street
Bishop, CA 93514

## CALIFORNIA DECLARATION

I, Bellanius Almaron Senior Collector II of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America Home Loan

☒ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☐ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

08-27-12  Newark, NJ
Date and Place

Bellanius Almaron
Name of Signor

CA-DECLARATIONS 8633/9508 8/27/2008

**Exhibit C, Page 000004**

Exhibit D

Doc # 2013004545
Page 1 of 1
Date: 8/16/2013 03:00P
Filed by: CORELOGIC INFORMATION SOLUTION
Filed & Recorded in Official Records
of MONO COUNTY
LYNDA ROBERTS
CLERK-RECORDER
Fee: $8.00

Recording Requested By:
Bank of America
Prepared By:  Noor Sadruddin
16001 N. Dallas Pkwy
Addison, TX 75001

When recorded mail to:
CoreLogic
Mail Stop# ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID# 16211942823778597

Property Address:
52 Sacramento St
Bishop, CA 93514-9462
CAD ADT 25593770   6/5/2013  GT0531A

*This space for Recorder's use*

G 8886596

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto GREEN TREE SERVICING LLC whose address is 7360 S. KYRENE ROAD, TEMPE, AZ 85283 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, AS NOMINEE FOR SCME MORTGAGE BANKERS INC,

Original Borrower(s):  DAVID BUSHLOW, A SINGLEMAN AND CATHERINE HALL, A SINGLEWOMAN, AS JOINT TENANTS

Original Trustee:  STEWART TITLE COMPANY OF SAN DIEGO, A CALIFORNIA CORPORATION

Date of Deed of Trust:  4/14/2006

Original Loan Amount:  $223,000.00

Recorded in Mono County, CA on: 4/21/2006, book N/A, page N/A and instrument number 2006003098

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on **JUN 0 6 2013**

Bank of America, N.A.

By: _____
Arafath Islam
Assistant Vice President

State of TX, County of Dallas

On JUN 0 6 2013 before me, Carole A. Kolarik, a Notary Public, personally appeared Arafath Islam, Assistant Vice President of Bank of America, N.A. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Carole A. Kolarik
Notary Public: Carole A. Kolarik
My Commission Expires: 12/1/2014



CAROLE A. KOLARIK
Notary Public, State of Texas
My Commission Expires
December 1, 2014

**Exhibit D**

Description: Mono,CA Document - Year DocId (7/1/2000 to Present) 2013.4545 Page: 1 of 1
Order: 120300443 Comment:

# Exhibit E



# TRUSTEE CORPS

*Experience. Trust. Integrity.*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 870-8960    Fax (949) 752-7091

DATE: July 14, 2016

**DAVID BUSHLOW**
**52 SACRAMENTO ST**
**BISHOP, CA  93514**

**Reinstatement / Pay Off Demand**

TRUSTEE SALE #:      **CA05000686-14**
LOAN #:                     **0038278719**
PROPERTY:                **52 SACRAMENTO ST, BISHOP, CA 93514**

To Whom It May Concern:

With regards to the above referenced file our office is handling, enclosed please find our REINSTATEMENT and/or PAY OFF Demand, which you have requested.

Please be advised that this loan is currently in foreclosure and/or bankruptcy and the figures provided herewith are subject to change at any time due to additional fees and costs relating to the foreclosure/bankruptcy proceeding may accrue before the "good through/expiration date" of the Demand.

Please note that by providing this Demand to you with a "good through/expiration date", no deadlines are waived, postponed and/or tolled, including, but not limited to, Trustee's sale dates and statutory reinstatement/pay off dates.

You must pay the total amount due stated in the Demand (in the form of a cashier's check only) on or before the expiration date in order to REINSTATE and/or PAY OFF this loan.  Please review the attached document(s) for specific payment instructions.

**\*\*\*\* IMPORTANT \*\*\*\***

**THESE FIGURES ARE SUBJECT TO FINAL VERIFICATION UPON RECEIPT OF FUNDS**

Please feel free to contact our office if you should have any questions or concerns.

Sincerely,

TRUSTEE CORPS

[Enclosure (s)]

**Exhibit E, Page 000001**



# TRUSTEE CORPS

*Experience. Trust. Integrity.*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-8960    Fax (949) 752-7001

---

Date: July 14, 2016 T.S. #: CA05000686-14 Loan #0038278719 Beneficiary: Ditech Financial LLC
Prepared By: MA

# REINSTATEMENT DEMAND

| | |
|---|---|
| Payments | $98,250.93 |
| Late Charges | $232.71 |
| Pending Late Charges | $77.57 |
| Corporate Advance | $1,977.14 |

## TOTAL amount due to <u>REINSTATE</u> loan: $<u>100,538.35</u>

**\*\*\*\* IMPORTANT \*\*\*\***
**THESE FIGURES ARE SUBJECT TO FINAL VERIFICATION UPON RECEIPT OF FUNDS**

---

[Please note the following:]

## THIS STATEMENT EXPIRES ON: __08/12/2016__ @ __3:00p.m.__ .

PLEASE BE ADVISED THAT YOU MUST CONTACT OUR OFFICE AT LEAST <u>1-BUSINESS DAY</u> PRIOR TO SENDING IN FUNDS FOR AN UPDATE ON THE TOTAL AMOUNT DUE TO REINSTATE THIS LOAN. *TRUSTEE CORPS* <u>WILL NOT</u> ACCEPT ANY FUNDS UNLESS THE TOTAL AMOUNT DUE IS VERIFIED PRIOR TO THE EXPIRATION DATE OF THIS DEMAND. *TRUSTEE CORPS* <u>WILL NOT</u> BE RESPONSIBLE FOR ANY SHORTAGE OF FUNDS. *TRUSTEE CORPS* AND THE LENDER ON THIS LOAN HAVE THE RIGHT TO REJECT AND RETURN ANY FUNDS, WHICH ARE NOT ADEQUATE TO REINSTATE THE DEFAULT.

You <u>must provide</u> proof that the following items are paid current (prior to tendering funds):
-SENIOR LIENS
-PROPERTY TAXES
-FIRE INSURANCE

Signed by:                                             Approved by:

_____            _____
Reinstatement/Pay Off Department

---

## REGARDING REINSTATEMENTS AND/OR PAY OFFS SENT TO *TRUSTEE CORPS*:

- *TRUSTEE CORPS* <u>will only</u> accept CASH or CASHIER`S CHECKS <u>made payable in U.S. Dollars</u> to *TRUSTEE CORPS*.
- <u>NO</u> personal checks, <u>NO</u> Title Company, <u>NO</u> Escrow Company, <u>NO</u> business checks or <u>NO</u> wire transfers will be accepted.
- All funds are subject to final verification with the lender.
- Funds must be delivered to *TRUSTEE CORPS* at: *17100 Gillette Ave., Irvine, CA 92614*
- Please direct any correspondence to:  *REINSTATEMENT / PAY OFF DEPARTMENT;* rprequests@trusteecorps.com

**Exhibit E, Page 000002**



# TRUSTEE CORPS

*Experience. Trust. Integrity*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-8960     Fax (949) 752-7001

# PLEASE READ

## (Important)

As you know, you are requesting the amount to reinstate or pay off a loan that is in foreclosure. Based on this situation, our company has strict requirements, which are listed below:

- Please allow adequate time when making your requests. On average this process takes between 7 to 21 business days to complete. The time period might be longer or shorter depending on the Lender and the volume of requests received.

- **Only cash or cashier`s checks will be accepted to cure the default.**

- **No personal checks, No escrow company checks, No title company checks, No business checks, No trust fund checks and No wire transfers will be accepted.** If you have any questions regarding this requirement, please contact our office before tendering funds.

- We do not automatically issue updates or per diem interest amounts on processed demands without a new request. Each time a demand needs to be updated, a new request must be made to the Lender.

- You must contact our office at least 1-business day prior to tendering funds.

- We reserve the right to return any funds that are not adequate to reinstate or pay off the default on this loan. *TRUSTEE CORPS* AND THE LENDER ON THIS LOAN HAVE THE RIGHT TO ADJUST THESE FIGURES AND REFUSE ANY FUNDS WHICH ARE INSUFFICIENT TO PAY THE LOAN IN FULL OR REINSTATE FOR ANY REASON, INCLUDING BUT NOT LIMITED TO ERROR IN CALCULATION, PREVIOUSLY DISHONORED CHECKS OR MONEY ORDERS, OR ADDITIONAL DISBURSEMENTS MADE BETWEEN THE DATE OF THIS PAYOFF STATEMENT AND THE RECEIPT OF FUNDS.

* IMPORTANT: Some of the fees and costs listed above may not actually be incurred, if you payoff on the date of this letter or if events we anticipate will happen do not occur. We only require that you pay the fees and costs actually incurred as of the date of your payment. If for whatever reason your payment includes any anticipated fee or cost or other item but the actual amount due on the date of payment is less, any excess amount will be returned to you.

**Exhibit E, Page 000003**



TRUSTEE CORPS

*Experience. Trust. Integrity*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-8860    Fax (949) 752-7091

If your payoff amount tendered is less than the total amount due on the date of your payment, the lender or servicer reserves the right to reject your payment and continue with the legal process.

The reinstatement or payoff figures listed above include items that have been paid by the lender or servicer or incurred by the Trustee Corps that are currently due or will become due by the Good Through Date. In constructing this reinstatement or payoff, we have included anticipated additional fees and costs in order to provide you with an estimated payoff after the date of this letter. These anticipated fees and costs represent an estimate as to what our actual fees and costs will be if you pay off your loan no later than the Good Through Date. Please understand that the above figures are subject to final verification upon receipt by the lender or servicer. All fees and costs incurred after the issuance of this payoff letter will continue to be assessed until the loan is paid in full.

**Reinstate and/or Payoff funds must be made payable and delivered to:**



TRUSTEE CORPS

*Experience. Trust. Integrity*

17100 Gillette Ave.

Irvine, CA 92614

Ph (844) 670-8860    Fax (949) 752-7091

attn:  Reinstatement/Pay Off Dept.

If you are unable to cure the amount due on the foreclosure action against your property, there might be other alternatives available to you. Please contact your Lender's loss mitigation department.

This information is provided to you as a courtesy only and is not a guaranty of the outcome of your situation.

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

**Exhibit E, Page 000004**

Ditech

# Declaration of mailing

Date: 07/14/2016
Mailing: REIN
Page: 1

Trustee's Sale No. CA05000686-14-4

I , MARIO AMBRIZ , declare: That I am an officer, agent, or employee of MTC Financial Inc. dba Trustee Corps
whose business address is 17100 Gillette Ave, Irvine, CA 92614
am over the age of eighteen years; On 07/14/2016 by Certified and First Class mail, enclosed in a sealed envelope with postage
notices,
a true and correct copy of which is hereunto attached and made part hereof, addressed to following:

| Number of Article | Name of Addressee, Street, and Post Office Address | First Class Fee | Cert Fee | R.R Fee |
|---|---|---|---|---|
| 92071901510139C8036927 | DAVID BUSHLOW<br>52 SACRAMENTO ST<br>BISHOP, CA 93514 | 0.47 | 3.77 | 0.00 |
| 92071901510139C8036934 | DAVID BUSHLOW<br>52 SACRAMENTO STREET<br>BISHOP, CA 93514 | 0.47 | 3.77 | 0.00 |

Firstclass Total: **$0.94** Postage Total: **$7.54**   RR Total: **$0.00**

| Number of Pieces by Sender | Number of Pieces Received | Postmaster (Name) Receiving Employee | |
|---|---|---|---|
| 2 | | | Total: **$8.48** |

I certify (or Declare) under penalty of perjury under the laws of the State of CA that the foregoing is true and correct

07/14/2016

_____ | _____
(Date) | (Declarant)       MARIO AMBRIZ, Mailing Processor

**Exhibit E, Page 000005**

Trustee Sale Number:
CA05000686-14-4
9207190151013903036927

Trustee Corps.
17100 Gillette Ave,
Irvine CA 92614



USPS CERTIFIED MAIL

9207 1901 5101 3903 0369 27

G
3



CA05000686-14-4
DAVID BUSHLOW
52 SACRAMENTO ST
BISHOP, CA 93514



Trustee Corps.
17100 Gillette Ave,
Irvine CA 92614

USPS CERTIFIED MAIL

9207 1901 5101 3903 0369 34

Trustee Sale Number:
CA05000686-14-4
9207190151013903036934

G
3



CA05000686-14-4
DAVID BUSHLOW
52 SACRAMENTO STREET
BISHOP, CA 93514

**Exhibit E, Page 000007**



# TRUSTEE CORPS

*Experience. Trust. Integrity.*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-3960    Fax (949) 752-7091

DATE: July 14, 2016

**DAVID BUSHLOW**
**52 SACRAMENTO ST**
**BISHOP, CA  93514**

**Reinstatement / Pay Off Demand**

| | |
|---|---|
| TRUSTEE SALE #: | **CA05000686-14** |
| LOAN #: | **0038278719** |
| PROPERTY: | **52 SACRAMENTO ST, BISHOP, CA 93514** |

To Whom It May Concern:

With regards to the above referenced file our office is handling, enclosed please find our REINSTATEMENT and/or PAY OFF Demand, which you have requested.

Please be advised that this loan is currently in foreclosure and/or bankruptcy and the figures provided herewith are subject to change at any time due to additional fees and costs relating to the foreclosure/bankruptcy proceeding may accrue before the "good through/expiration date" of the Demand.

Please note that by providing this Demand to you with a "good through/expiration date", no deadlines are waived, postponed and/or tolled, including, but not limited to, Trustee`s sale dates and statutory reinstatement/pay off dates.

You must pay the total amount due stated in the Demand (in the form of a cashier`s check <u>only</u>) on or before the expiration date in order to REINSTATE and/or PAY OFF this loan.  Please review the attached document(s) for specific payment instructions.

**** IMPORTANT ****

**THESE FIGURES ARE SUBJECT TO FINAL VERIFICATION UPON RECEIPT OF FUNDS**

Please feel free to contact our office if you should have any questions or concerns.

Sincerely,

TRUSTEE CORPS

[Enclosure (s)]

**Exhibit E, Page 000008**



## TRUSTEE CORPS

*Experience. Trust. Integrity*

17100 Gillette Avenue
Irvine, CA 92614

Ph (844) 670-9960    Fax (949) 752-7001

Date: July 14, 2016 T.S. #: CA05000686-14  Loan #0038278719 Beneficiary: Ditech Financial LLC
Prepared By: MA

# REINSTATEMENT DEMAND

| | |
|---|---|
| Payments | $98,250.93 |
| Late Charges | $232.71 |
| Pending Late Charges | $77.57 |
| Corporate Advance | $1,977.14 |

## TOTAL amount due to REINSTATE loan: $100,538.35

**** IMPORTANT ****
THESE FIGURES ARE SUBJECT TO FINAL VERIFICATION UPON RECEIPT OF FUNDS

**[Please note the following:]**

## THIS STATEMENT EXPIRES ON:  08/12/2016  @   3:00p.m.

PLEASE BE ADVISED THAT YOU MUST CONTACT OUR OFFICE AT LEAST 1 BUSINESS DAY PRIOR TO SENDING IN FUNDS FOR AN UPDATE ON THE TOTAL AMOUNT DUE TO REINSTATE THIS LOAN.  *TRUSTEE CORPS* WILL NOT ACCEPT ANY FUNDS UNLESS THE TOTAL AMOUNT DUE IS VERIFIED PRIOR TO THE EXPIRATION DATE OF THIS DEMAND. *TRUSTEE CORPS* WILL NOT BE RESPONSIBLE FOR ANY SHORTAGE OF FUNDS. *TRUSTEE CORPS* AND THE LENDER ON THIS LOAN HAVE THE RIGHT TO REJECT AND RETURN ANY FUNDS, WHICH ARE NOT ADEQUATE TO REINSTATE THE DEFAULT.

You must provide proof that the following items are paid current (prior to tendering funds):
    -SENIOR LIENS
    -PROPERTY TAXES
    -FIRE INSURANCE

Signed by:                                                          Approved by:

_____                    _____
Reinstatement/Pay Off Department

## REGARDING REINSTATEMENTS AND/OR PAY OFFS SENT TO *TRUSTEE CORPS*:

- *TRUSTEE CORPS* will only accept CASH or CASHIER`S CHECKS made payable in U.S. Dollars to *TRUSTEE CORPS*.
- NO personal checks, NO Title Company, NO Escrow Company, NO business checks or NO wire transfers will be accepted.
- All funds are subject to final verification with the lender.
- Funds must be delivered to *TRUSTEE CORPS* at: *17100 Gillette Ave., Irvine, CA 92614*
- Please direct any correspondence to: *REINSTATEMENT / PAY OFF DEPARTMENT;* rprequests@trusteecorps.com

**Exhibit E, Page 000009**



## TRUSTEE CORPS

*Reperterora Trust Inspiring*

17100 Gillette Avenue

Irvine, CA 92614

Ph (844) 670-3960    Fax (949) 752-7091

# PLEASE READ

## (Important)

As you know, you are requesting the amount to reinstate or pay off a loan that is in foreclosure. Based on this situation, our company has strict requirements, which are listed below:

- Please allow adequate time when making your requests. On average this process takes between 7 to 21 business days to complete. The time period might be longer or shorter depending on the Lender and the volume of requests received.

- **Only cash or cashier's checks will be accepted to cure the default.**

- **No personal checks, No escrow company checks, No title company checks, No business checks, No trust fund checks and No wire transfers will be accepted.** If you have any questions regarding this requirement, please contact our office before tendering funds.

- We do not automatically issue updates or per diem interest amounts on processed demands without a new request. Each time a demand needs to be updated, a new request must be made to the Lender.

- You must contact our office at least 1-business day prior to tendering funds.

- We reserve the right to return any funds that are not adequate to reinstate or pay off the default on this loan. *TRUSTEE CORPS* AND THE LENDER ON THIS LOAN HAVE THE RIGHT TO ADJUST THESE FIGURES AND REFUSE ANY FUNDS WHICH ARE INSUFFICIENT TO PAY THE LOAN IN FULL OR REINSTATE FOR ANY REASON, INCLUDING BUT NOT LIMITED TO ERROR IN CALCULATION, PREVIOUSLY DISHONORED CHECKS OR MONEY ORDERS, OR ADDITIONAL DISBURSEMENTS MADE BETWEEN THE DATE OF THIS PAYOFF STATEMENT AND THE RECEIPT OF FUNDS.

\* IMPORTANT: Some of the fees and costs listed above may not actually be incurred, if you payoff on the date of this letter or if events we anticipate will happen do not occur. We only require that you pay the fees and costs actually incurred as of the date of your payment. If for whatever reason your payment includes any anticipated fee or cost or other item but the actual amount due on the date of payment is less, any excess amount will be returned to you.

**Exhibit E, Page 000010**



## TRUSTEE CORPS
*Experience. Trust. Integrity.*
17100 Gillette Avenue
Irvine, CA 92614
Ph (844) 670-8860    Fax (949) 752-7091

If your payoff amount tendered is less than the total amount due on the date of your payment, the lender or servicer reserves the right to reject your payment and continue with the legal process.

The reinstatement or payoff figures listed above include items that have been paid by the lender or servicer or incurred by the Trustee Corps that are currently due or will become due by the Good Through Date. In constructing this reinstatement or payoff, we have included anticipated additional fees and costs in order to provide you with an estimated payoff after the date of this letter. These anticipated fees and costs represent an estimate as to what our actual fees and costs will be if you pay off your loan no later than the Good Through Date. Please understand that the above figures are subject to final verification upon receipt by the lender or servicer. All fees and costs incurred after the issuance of this payoff letter will continue to be assessed until the loan is paid in full.

### Reinstate and/or Payoff funds must be made payable and delivered to:



## TRUSTEE CORPS
*Experience. Trust. Integrity.*
17100 Gillette Ave.
Irvine, CA 92614

Ph (844) 670-8860    Fax (949) 752-7091
attn: Reinstatement/Pay Off Dept.

If you are unable to cure the amount due on the foreclosure action against your property, there might be other alternatives available to you. Please contact your Lender's loss mitigation department.

This information is provided to you as a courtesy only and is not a guaranty of the outcome of your situation.

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

**Exhibit E, Page 000011**

# Exhibit F



# TRUSTEE CORPS

17100 Gillette Avenue, Irvine, CA 92614
949.252.8300 *phone*    949.252.8330 *fax*
www.trusteecorps.com

August 1, 2016

David Bushlow
52 Sacramento Street
Bishop, CA 93514

Re:     Trustee Sale No.: CA05000686-14
        Property Address: 52 Sacramento Street, Bishop, CA 93514

Dear Mr. Bushlow:

We received your correspondence via fax on July 18, 2016.  Trustee Corps, including its employees and authorized agents, serve in nominal capacity as foreclosure trustee.   As such, your correspondence should be properly addressed and directed to appropriate parties, such as the lender.  Please be advised the foreclosure will proceed accordingly.

Trustee Corps is not authorized to accept service of your correspondence on behalf of any parties who may be involved and this correspondence shall not be construed as such.  Further, Trustee Corps specifically reserves any of its rights and/or privileges available and by responding to your correspondence, does not make any representation concerning any and all allegations contained therein.  Comments or concerns specific to Trustee Corps may be submitted online.  Please visit us at trusteecorps.com.

Sincerely,

Trustee Corps

Marisol A. Nagata, Esq.
General Counsel

MAN:eag

**Exhibit F**

1 | P a g e

Exhibit G

RECORDING REQUESTED BY:

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL RECORDED IN THE OFFICE OF MONO COUNTY

RECORDING FEE: **$11.00**

RECORDED ON:   **August 29, 2016**

AS DOCUMENT NO: **2016003214**

BY: **s/ VANGIE ORTEGA**

SERVICELINK TITLE COMPANY

WHEN RECORDED MAIL TO:

TRUSTEE CORPS
17100 Gillette Ave
Irvine, CA 92614

---

APN: 26-291-03                    TS No: CA05000686-14-1FT                    TO No: 120300443

## SUBSTITUTION OF TRUSTEE

WHEREAS, DAVID BUSHLOW, A SINGLE MAN AND CATHERINE R. HALL, A SINGLE WOMAN, AS JOINT TENANTS was the original Trustor(s), STEWART TITLE COMPANY OF SAN DIEGO was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for SCME MORTGAGE BANKERS, INC. was the original Beneficiary under that certain Deed of Trust dated April 14, 2006 and recorded on April 21, 2006 as Instrument No. 2006003098 of official records in the Office of the Recorder of Mono County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, **GREEN TREE SERVICING LLC** hereby substitutes **MTC Financial Inc. dba Trustee Corps**, whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated: 4/15/2014                    **GREEN TREE SERVICING LLC**

By: Gretchen Waggener, Foreclosure Supervisor

STATE OF ARIZONA
COUNTY OF MARICOPA

The foregoing instrument was acknowledged before me this 15 day of April , 2014 by Gretchen Waggener, Foreclosure Supervisor of Green Tree Servicing LLC, a Limited Liability Company, on behalf of the Company.

Notary for State of Arizona
#
Commission expires

ADRIANA IRENE ROMERO
Notary Public - Arizona
Maricopa County
My Commission Expires
May 2, 2017

**Exhibit G, Page 000001**

# AFFIDAVIT OF MAILING OF
# SUBSTITUTION OF TRUSTEE
## BY CODE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2934a

TRUSTEE SALE #: **CA05000686-14-1**

TRUSTOR: **DAVID BUSHLOW, A SINGLE MAN AND CATHERINE R. HALL, A SINGLE WOMAN, AS JOINT TENANTS**

ORDER #: **140189096**

I, Stephanie Hoy, declare: That I am an officer, agent or employee of MTC FINANCIAL, INC. DBA TRUSTEE CORPS, whose address is:

**17100 GILLETTE AVENUE
IRVINE, CA 92614**

I am over the age of eighteen years: On August 22, 2016, by Certified and First Class Mail, enclosed and sealed in an envelope with postage fully prepaid, I deposited in the United States Mail, a copy of the attached Substitution of Trustee to the Trustee of record under Deed of Trust described in said Substitution, and;

A copy of the attached Substitution has been mailed prior to the recording thereof, in the manner provided in Section 2934a and 2924b of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) the above statement is true and correct under the laws of the State of California.

Dated: August 22, 2016

BY: Stephanie Hoy

**Exhibit G, Page 000002**

# Exhibit H

RECORDING REQUESTED BY:

*SERVICELINK*

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

Doc # 2016003975
Page 1 of 3
Date: 10/17/2016  01:28P
Filed by: SPL EXPRESS, INC.
Filed & Recorded in Official Records
of MONO COUNTY
BOB MUSIL
CLERK-RECORDER
Fee: $14.00

---

| APN: 026-291-003-000 | TS No: CA05000686-14-1 | TO No: 120300443 |
|---|---|---|

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
**(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED April 14, 2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **November 10, 2016 at 02:00 PM, Front Door Entrance, Inyo-Mono Title Company, 218 Sierra Park Road, Mammoth Lakes, CA 93546, MTC Financial Inc. dba Trustee Corps**, as the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on April 21, 2006 as Instrument No. 2006003098, and that said Deed of Trust was modified by Modification Agreement recorded on December 13, 2006 as Instrument Number 2006008864, of official records in the Office of the Recorder of Mono County, California, executed by DAVID BUSHLOW, A SINGLE MAN AND CATHERINE R. HALL, A SINGLE WOMAN, AS JOINT TENANTS, as Trustor(s), in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for SCME MORTGAGE BANKERS, INC. as Beneficiary, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER**, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: **52 SACRAMENTO ST, (BISHOP), CHALFANT, CA 93514**

**Exhibit H, Page 000001**

DOC # 2416003975
Page 2 of 3

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $283,529.98 (Estimated).  However, prepayment premiums, accrued interest and advances will increase this figure prior to sale.  Beneficiary's bid at said sale may include all or part of said amount.  In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee.  In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right.  The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction.  You will be bidding on a lien, not on the property itself.  Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien.  If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property.   You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information.  If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

TS No: CA05000686-14-1

**Exhibit H, Page 000002**

DOC # 2016003975
Page 3 of 3

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call Auction.com at 800.280.2832 for information regarding the Trustee's Sale or visit the Internet Web site address www.Auction.com for information regarding the sale of this property, using the file number assigned to this case, CA05000686-14-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: October 13, 2016

MTC Financial Inc. dba Trustee Corps
TS No. CA05000686-14-1
17100 Gillette Ave
Irvine, CA 92614
Phone:949-252-8300
TDD: 866-660-4288

_____
Stephanie Hoy, Authorized Signatory

**SALE INFORMATION CAN BE OBTAINED ONLINE AT www.Auction.com**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
**Auction.com at 800.280.2832**

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

TS No: CA05000686-14-1

**Exhibit H, Page 000003**

# Exhibit I

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Ditech Financial LLC
2100 East Elliot Road, Building 94
Tempe, AZ 85284

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND
CORRECT COPY OF THE ORIGINAL RECORDED
IN THE OFFICE OF MONO COUNTY

RECORDING FEE:   **$8.00**

RECORDED ON:   **November 21, 2016**

AS DOCUMENT NO:   **2016004636**

BY:   **s/ VANGIE ORTEGA**

SERVICELINK TITLE COMPANY

---

APN: 026-291-003-000          TS No: CA05000686-14-1          TO No: 120300443

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **Federal National Mortgage Association** all beneficial interest under that certain Deed of Trust dated as of April 14, 2006, executed by DAVID BUSHLOW, A SINGLE MAN AND CATHERINE R. HALL, A SINGLE WOMAN, AS JOINT TENANTS as Trustor(s), to STEWART TITLE COMPANY OF SAN DIEGO as Trustee and recorded on April 21, 2006 as Instrument No. 2006003098 and that said Deed of Trust was modified by Modification Agreement recorded December 13, 2006 as Instrument Number 2006008864 of official records in the Office of the Recorder of Inyo County, California.

All rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property more commonly known as **52 SACRAMENTO ST, (BISHOP), CHALFANT, CA 93514** and more fully described in said Deed of Trust.

Dated: **10-17-16**

Ditech Financial LLC FKA Green Tree Servicing LLC

By: **Patricia Luna**
Assistant Vice President

State Of **Texas**

County Of **Dallas**

Before me, **Bridget Taylor**, on this day personally appeared **Patricia Luna**, known to me or proved to me on the oath of **personally known** to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this **17** day of **October**, **2016**.

Notary Public Signature
My Commission Expires: **4-14-2020**

**Bridget Taylor**

BRIDGET TAYLOR
Notary Public, State of Texas
Comm. Expires 04-14-2020
Notary ID 130619295

**Exhibit I**

Exhibit J

RECORDING REQUESTED BY:

WHEN RECORDED MAIL DEED
AND TAX STATEMENT TO:

Federal National Mortgage Association
c/o Ditech Financial LLC
2100 East Elliot Road, Building 94
Tempe, AZ 85284

THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND
CORRECT COPY OF THE ORIGINAL RECORDED
IN THE OFFICE OF MONO COUNTY

RECORDING FEE:   **$14.00**

RECORDED ON:   **November 21, 2016**

AS DOCUMENT NO:  **2016004637**

BY:   **s/ VANGIE ORTEGA**

SERVICELINK TITLE COMPANY

---

APN: 026-291-003-000          TS No: CA05000686-14-1          TO No: 140189096

## TRUSTEE'S DEED UPON SALE

The undersigned Grantor, under penalty of perjury, declares:

EXEMPT PER R&T CODE SECTION 11922
1) The Grantee herein was the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was:    $285,006.72
3) The amount paid by the grantee at the trustee sale was:    $178,800.00
4) The documentary transfer tax is:                          $0.00
5) Said property is in the city of: CHALFANT
6) A.P.N. 026-291-003-000

and **MTC Financial Inc. dba Trustee Corps**, herein called "Trustee", as Trustee (or as Successor Trustee) of the Deed of Trust hereinafter described, hereby grants and conveys, but without covenant or warranty, express or implied, to **Federal National Mortgage Association**, herein called "Grantee", the real property in the County of Mono, State of California, described as follows:

LOT 3, BLOCK 3, WOLBACH'S SUBDIVISION, IN THE COUNTY OF MONO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5, PAGES 41 AND 41A OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

This deed is made pursuant to the authority and powers given to Trustee (or to Successor Trustee) by law and by that certain Deed of Trust dated April 14, 2006, made to DAVID BUSHLOW, A SINGLE MAN AND CATHERINE R. HALL, A SINGLE WOMAN, AS JOINT TENANTS and recorded on April 21, 2006 as Instrument No. 2006003098 and that said Deed of Trust was modified by Modification Agreement and recorded December 13, 2006 as Instrument Number 2006008864 of official records in the Office of the Recorder of Mono County, California, Trustee (or Successor Trustee) having complied with all applicable statutory provisions and having performed all of his duties under the said Deed of Trust.

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

**Exhibit J, Page 000001**

APN: 026-291-003-000                TS No: CA05000686-14-1                TO No: 140189096

All requirements of law and of said Deed of Trust relating to this sale and to notice thereof having been complied with. Pursuant to the Notice of Trustee's Sale, the above described property was sold by Trustee (or Successor Trustee) at public auction on **November 10, 2016** at the place specified in said Notice, to Grantee who was the highest bidder therefore, for **$178,800.00** cash, in lawful money of the United States, which has been paid.

Dated: ___11/16/16___                **MTC Financial Inc. dba Trustee Corps**

By: Stephanie Hoy, Authorized Signatory

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA
County of ORANGE

On ___11-16-16___ before me, ___Jared Degener___, a Notary Public, personally appeared STEPHANIE HOY, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

> JARED DEGENER
> Notary Public - California
> Orange County
> Commission # 2147958
> My Comm. Expires Apr 26, 2020

**Exhibit J, Page 000002**

APN: 026-291-003-000            TS No: CA05000686-14-1            TO No: 140189096

## CERTIFICATE OF ACCEPTANCE
### Government Code Section 27281

This is to certify that the interest in Real Property conveyed by the attached **Trustee's Deed Upon Sale** dated November 16, 2016, from MTC Financial Inc. dba Trustee Corps to **Federal National Mortgage Association** is hereby accepted by order of **Federal National Mortgage Association** on November 16, 2016 (or by the undersigned officer or agent on behalf **Federal National Mortgage Association** and the Grantee consents to the recordation thereof by its Duly Authorized Agent.

Dated: _____ 11 / 16 / 16 _____

_____
Federal National Mortgage Association,
by Malcolm and Cisneros, a Law Corporation, as Attorney in Fact
Rande D. Johnsen, Assistant Secretary

**Exhibit J, Page 000003**